## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **22nd** *day of* **May, 2018**.

Gary Linwood Bush,                                                                                    Petitioner,

against          Record No. 2056-17-2
                      Prince George conviction

Commonwealth of Virginia,                                                                     Respondent.

Gary Linwood Bush,                                                                                    Petitioner,

against          Record No. 2057-17-2
                      Petersburg conviction

Commonwealth of Virginia,                                                                     Respondent.

Upon Petitions for Writ of Actual Innocence

Before Chief Judge Huff, Judges Russell and Malveaux

Jennifer L. Givens (The Innocence Project at the University of Virginia School of Law, on brief), for petitioner.

Matthew P. Dullaghan, Assistant Attorney General (Mark R. Herring, Attorney General, on brief), for respondent.

Gary Linwood Bush ("Bush") petitions this Court to grant two writs of actual innocence based on non-biological evidence pursuant to Code §§ 19.2-327.10 to -327.14. Bush filed two petitions, one seeking to vacate his July 16, 2007 conviction for robbery from the Circuit Court of the City of Petersburg, and the other seeking to vacate his August 22, 2007 conviction for robbery from the Circuit Court of Prince George County. In support of his petitions, Bush proffers newly-discovered evidence—Christian Amos' confession to both robberies and conviction for one of the robberies. The Commonwealth agrees that Bush has satisfied the statutory requirements and joins in asking this Court to grant his petitions. For the reasons that follow, we grant Bush's petitions.

BACKGROUND

Bush's Trials and Convictions

Petersburg Trial and Conviction

On June 27, 2007, in the Petersburg Circuit Court, Bush was convicted in a jury trial for robbery, in violation of Code § 18.2-58, and sentenced to five years' incarceration. At trial, the Commonwealth presented the testimony of Brandy Hawthorn, a teller at the Bank of Southside Virginia on Crater Road. She testified that on October 6, 2006, a man at the bank passed her a note stating that he had a gun and wanted 100, 50, and 20-dollar bills. Hawthorn stated that the man was wearing a baseball cap and looking down during their interaction. Their entire interaction lasted less than ninety seconds, and because the robber was looking down, Hawthorn only got a few "glimpse[s]" of him for a total of about five seconds. Hawthorn identified Bush as the robber in a photo lineup, and also identified him as the robber in a preliminary hearing and at trial.

The Commonwealth also presented the testimony of Dena Patrick, the manager of the bank. She first saw the robber at the teller station, where he was six or seven feet away from her for about ten seconds. He then ran past her, and she saw him for a few seconds as he passed within three feet. His head was down the entire time she viewed him. She identified Bush as the robber in a photo lineup, and also made an in-court identification of him at trial.

Bush testified at trial. He denied any involvement in the robbery and stated that he was in another location at the time. Detective Robert Carmichael, the arresting officer, testified that Bush told him that he had a drug problem and spent $1,200 to $1,600 a week on drugs.

Prince George Trial and Conviction

On August 2, 2007, in the Prince George County Circuit Court, Bush was convicted in a bench trial for robbery, in violation of Code § 18.2-58, and sentenced to seven years of active incarceration. At trial, the Commonwealth presented the testimony of Bethany Hays, a teller at the BB&T bank branch at the Crossings shopping center. She testified that on November 8, 2006, a robber passed her a note stating that he had a gun

-2-

and wanted 100, 50, and 20-dollar bills.  Because the man was wearing a camouflage baseball cap, Hays was only able to see the lower part of his face.  She identified Bush as the robber in a photo lineup and at trial.  Bush held an account at BB&T and had banked at the Crossings branch before; however, Hays did not remember seeing him, even though she testified that she was "usually . . . very familiar with the clients that do come in every day."

Thomas Ard, a construction worker, also testified at trial.  He stated that he was in the bank at the time of the robbery and that the robber hit him in the shoulder as he left.  Ard had previously seen Bush "around town" and at "drug houses."  He identified Bush as the robber of the Crossings BB&T in a photo lineup and at trial.  At trial, Ard did not remember the robber wearing a baseball cap.

Detective Carmichael also testified at this trial, stating that Bush told him that he had a serious drug problem and had spent up to $1,600 a week on drugs.

Bush testified in his own defense.  He denied any involvement in the robbery and stated that he was in another location at the time.  Bush provided law enforcement with a palm print sample, which did not match the palm print on the note given to the teller.  He also provided a sample of his handwriting, which could neither be identified nor eliminated as the same handwriting on the note.

Bush did not appeal either conviction, and did not seek habeas corpus relief.

Amos' Confession

On May 17, 2016, Christian Amos called Prince George County police dispatch and asked to speak with someone about bank robberies.  Amos went to police headquarters and was interviewed by Detective Reed.  Reed explained to Amos that even though he was in a police station, he was free to leave, and Amos stated that he "knew how it worked."  Amos told the detective that he had robbed the Bank of Southside Virginia on Crater Road in Petersburg twice, and had also robbed the BB&T in the Crossings shopping center in Prince George.  Amos provided several details about the BB&T robbery.  After reviewing those details, Reed confirmed that they matched the following facts of the robbery:  the time of day, the clothing worn during the robbery, the contents of the note passed to the teller, the amount of money taken, the robber's

direction of travel after leaving the bank, and the fact that it had been raining that day. Amos stated that he had committed the robberies because he was on pain medication and owed his supplier. He was unaware that someone else had been convicted and was incarcerated for the offenses.

During this interview, Amos provided a handwriting sample which contained the same language used in the robbery note. The Prince George Circuit Court later remarked that Amos' handwriting was "strikingly similar" to the handwriting used in the note.

On November 10, 2016, Amos pled guilty to the BB&T robbery. The Prince George Circuit Court accepted his plea. At his sentencing hearing, Amos stated that he confessed after his grandson had broken some windows. His grandson at first denied breaking the windows, but then confessed and apologized to the owner. Amos felt proud of his grandson, but also felt "like a hypocrite," and that he "had to own up to it." In a June 9, 2017 sentencing order, the court sentenced Amos to fifty years' incarceration, with all but five years suspended.

On June 30, 2017, Amos, in a document entitled "Declaration of Christian Lynn Amos," admitted that he committed the October 6, 2006 robbery of the Bank of Southside Virginia on Crater Road in Petersburg. The declaration provided details of that robbery.

<u>Bush's Petitions for Actual Innocence</u>

On December 15, 2017, Bush filed petitions for actual innocence for the Petersburg and Prince George robberies. Bush stated that his claims of innocence were based upon the "confession, guilty plea, conviction and declaration of Christian Amos" regarding the robberies. On February 13, 2018, this Court consolidated both petitions.

ANALYSIS

Code § 19.2-327.10 confers original jurisdiction upon this Court to consider a petition for a writ of actual innocence based on non-biological evidence. Under Code § 19.2-327.13, the decision to grant or dismiss a petition for a writ of actual innocence requires this Court to consider "the petition, the response by the Commonwealth, previous records of the case, the record of any hearing held under this chapter and, if

-4-

applicable, any findings certified from the circuit court."[1]  In addition, "[t]he burden of proof in a proceeding brought pursuant to this chapter shall be upon the convicted or delinquent person seeking relief."  Code § 19.2-327.13.

This Court may grant a writ for actual innocence "only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of [Code] § 19.2-327.11, and upon a finding that no rational trier of fact would have found proof of guilt or delinquency beyond a reasonable doubt."  Code § 19.2-327.13.  Thus, under this statute, a petitioner must prove by clear and convincing evidence that the newly-discovered evidence:

> (1) "was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court;" Code § 19.2-327.11(A)(iv),
>
> (2) "is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction [ . . . ] by the court;" Code § 19.2-327.11(A)(vi),
>
> (3) "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact [would] have found proof of guilt beyond a reasonable doubt;" Code § 19.2-327.11(A)(vii), and
>
> (4) "is not merely cumulative, corroborative or collateral."  Code § 19.2-327.11(A)(viii).

Carpitcher v. Commonwealth, 273 Va. 335, 343-44, 641 S.E.2d 486, 491 (2007).[2]  We discuss each evidentiary requirement in turn.

---

[1] We acknowledge that the Commonwealth has conceded that Bush has met his burden of establishing innocence under this Court's actual innocence statutes, Code §§ 19.2-327.10 through -327.14.  However, "[o]ur fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal."  Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*).  We find this principle especially important when evaluating petitions for actual innocence, "given the need to ensure that the writ of actual innocence does not evolve into an omnibus substitute for the carefully crafted procedures of the habeas corpus writ, Code § 8.01-654, *et seq.*, or impinge upon the Governor's exclusive power over executive clemency, Code § 53.1-229*, et seq.*"  Copeland v. Commonwealth, 52 Va. App. 529, 532, 664 S.E.2d 528, 530 (2008).  Thus, while we commend the Attorney General's candor, we review the record independent of this concession of law.

[2] While Code § 19.2-327.13 specifically states that this Court may only grant the writ if a petitioner has proven "all of the allegations contained in clauses (iv) through (viii) of subsection A of [Code]

First, we look to see if the evidence was previously unknown or unavailable to the petitioner or his attorney at the time the conviction became final in the circuit court. Code § 19.2-327.11(A)(iv). In these cases, it is obvious that the evidence was unknown to Bush or his attorney at the time of his convictions. Amos did not confess to the crimes until May 2016. The final orders of conviction were entered by the Petersburg and Prince George circuit courts in 2007. It is clear that Bush did not have access to this evidence within 21 days following entry of the final orders of conviction.

Second, we must determine if the evidence could not have been discovered prior to the finality of the orders entered by the circuit courts. Code § 19.2-327.11(A)(vi). The newly-discovered evidence in these cases meets this requirement, as Amos' unprompted confession did not occur until nearly ten years after the finality of the orders in the robbery cases. No amount of diligence by Bush or his trial attorneys could have discovered Amos, who was not a suspect identified by law enforcement and was only discovered due to his own actions in coming forward to confess to the robberies.

Third, we consider whether (1) the evidence is material, and (2) when considered with all of the other evidence in the current record, will prove that no rational trier of fact would have found proof of guilt beyond a reasonable doubt. Code § 19.2-327.11(A)(vii).

Under this two-part analysis, we first examine whether the evidence is material. In Carpitcher, our Supreme Court held that "to be 'material' within the meaning of Code § 19.2-327.11(A)(vii), evidence supporting a petition for a writ of actual innocence based on non-biological evidence must be true." 273 Va. at 345, 641 S.E.2d at 492. "Additionally, '[e]vidence that relates to a matter that is properly at issue in the case is said to be material.'" Turner v. Commonwealth, 282 Va. 227, 250-51, 717 S.E.2d 111, 123 (2011)

§ 19.2-327.11," the Supreme Court in Carpitcher only addressed four of these subsections, declining to address clause (v), which states that a petitioner must allege "the date the previously unknown or unavailable evidence became known or available to the petitioner, and the circumstances under which it was discovered." Using Carpitcher as our guide, we discuss clauses (iv) through (viii) and omit any discussion of clause (v), which in any case is substantially similar to clause (vi). See Code § 19.2-327.11(vi) (a petitioner must prove "that the previously unknown or unavailable evidence is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction . . . by the court").

(quoting Charles E. Friend, The Law of Evidence in Virginia § 11-1 at 431 (6th ed. 2003)). Cases from our Supreme Court and this Court discussing materiality mainly involve recantation evidence, with our appellate courts often concluding that the petitioner cannot establish by clear and convincing evidence that the recantation evidence is "true." See, e.g., Carpitcher, 273 Va. at 345, 641 S.E.2d at 492 (concluding that this Court did not err in holding that petitioner was required, and failed, to prove that the victim's recantation was true). However, the instant case involves not recantation evidence, but the unique situation of an unprompted confession by another person. We find that the nature of this evidence itself—another person's confession to the crimes—supports the finding that this evidence is "true," and thus material. Further, there is no evidence suggesting that Amos' confession was coerced or pressured by another individual or law enforcement, or is otherwise unreliable in any way, making it more likely to be "true." See Montgomery v. Commonwealth, 62 Va. App. 656, 676, 751 S.E.2d 692, 701 (2013) (concluding that a victim's recantation was true, in part because "there [were] no facts suggesting that her unprompted recantation was in any way pressured, coerced, or is otherwise unreliable"). In addition, Amos pled guilty to the Prince George robbery. See Hobson v. Youell, 177 Va. 906, 912, 15 S.E.2d 76, 78 (1941) (noting that a guilty plea "admits all the criminating facts alleged and the statutory elements of the offense charged"). Amos also provided detailed information about the robberies that indicated he was the true perpetrator, and in addition, the Prince George Circuit Court noted that his handwriting sample was "strikingly similar" to the handwriting of the BB&T robbery note. Based upon these circumstances, we conclude that Amos' confession was "true" and therefore material under the statute.

Next, under the second part of clause (vii), we must determine whether the material evidence, when considered with all of the other evidence in the current record, proves that "no rational trier of fact would have found proof of guilt beyond a reasonable doubt." Code § 19.2-327.11(A)(vii).

As an initial matter, we note that in 2013, the General Assembly amended Code §§ 19.2-327.13 and 19.2-327.11(A)(vii) to read, "no rational trier of fact *would* have found proof of guilt beyond a reasonable doubt" instead of "no rational trier of fact *could* have found proof of guilt beyond a reasonable doubt."

(Emphasis added).  Our Supreme Court recently discussed the statutory change from "could" to "would" in

In re Watford, ___ Va. ___, 809 S.E.2d 651 (2018).  In Watford, the Court examined the petitioner's petition

for actual innocence based upon biological evidence.  Id. at ___, 809 S.E.2d at 652.  Prior to examining the

petitioner's claim, the Supreme Court stated it had to "address the changes that have been made to the actual

innocence statutes, Code § 19.2-327.2 *et seq.*"[3]  Id. at ___, 809 S.E.2d at 655.  The Court in Watford found

that "[b]y changing 'could' to 'would,' the General Assembly has fundamentally changed the nature of our

inquiry in actual innocence cases."  Id. at ___, 809 S.E.2d at 656.

> The General Assembly's amendment of the actual innocence statutes has
> shifted the focus from the jury's raw ability to convict (the "could" standard) to
> the jury's volition to convict (the "would" standard), thereby significantly
> broadening the scope of our review in considering whether or not to grant a writ
> of actual innocence.  Through the use of the word "would," the General
> Assembly has directed us to examine the "probative force of the newly
> presented evidence in connection with the evidence of guilt adduced at trial."
> [Schlup v. Delo, 513 U.S. 298, 332 (1995)].  Thus, we are required to look
> beyond whether the evidence is sufficient to sustain the conviction; we must
> also examine the likelihood of a reasonable juror finding the petitioner guilty
> beyond a reasonable doubt once all of the evidence has been fairly considered.
> Id.
>
> This probabilistic approach still places a considerable burden upon the
> petitioner.  It is not enough for a petitioner to merely establish the existence of
> some conflicting evidence that introduces the possibility of reasonable doubt.
> Rather, the petitioner must prove, by clear and convincing evidence, that "*no
> rational trier of fact would have found proof of guilt beyond a reasonable
> doubt.*"  Code § 19.2-327.5 (emphasis added).  In other words, a petitioner's
> evidence must do more than establish the theoretical possibility that a rational
> fact finder would choose to acquit; it must establish such a high probability of
> acquittal, that this Court is reasonably certain that no rational fact finder would
> have found him guilty.

Id. at ___, 809 S.E.2d at 656-57.

---

[3] Although this section of Watford references the actual innocence statute involving biological evidence, the Supreme Court made clear that it was examining the change from "could" to "would" under the non-biological statute as well, since it explicitly noted this statute in its analysis.  See Watford, ___ Va. at ___, 809 S.E.2d at 655 ("Effective July 1, 2013, the General Assembly amended the statutory burden of proof that must be met before a petitioner can receive a writ of actual innocence.  2013 Acts chs. 170 & 180 (codified as amended at Code §§ 19.2-327.3(A)(vii), 19.2-327.5, 19.2-327.11(A)(vii), and 19.2-327.13).").

Applying this "probabilistic approach," the Court found that "[w]hen all of this evidence is considered, we find that it is highly unlikely that any rational factfinder would have found [petitioner] guilty beyond a reasonable doubt." Id. at ___, 809 S.E.2d at 659. The Court thus held the petitioner had proved, by clear and convincing evidence, that no rational trier of fact would have found proof of his guilt beyond a reasonable doubt. Id. at ___, 809 S.E.2d at 660.[4]

Thus, Watford is instructive in providing a probabilistic, "would have found proof of guilt" standard under the actual innocence statutes—a petitioner's evidence "must establish such a high probability of acquittal, that this Court is reasonably certain that no rational fact finder would have found him guilty." Id. at ___, 809 S.E.2d at 657. Here, the newly-discovered evidence was Amos' unprompted confession to both robberies. This confession established a high probability of Bush's acquittal, and considered together with his guilty plea and conviction for the Prince George robbery, allows this Court to conclude with reasonable certainty that no rational fact finder would have found Bush guilty. Thus, we find that Bush has proven by clear and convincing evidence that the newly-discovered evidence "when considered with all of the other

---

[4] This Court itself had prior occasion to analyze the statutory change from "could" to "would" in Altizer v. Commonwealth, 63 Va. App. 317, 757 S.E.2d 565 (2014). In Altizer, we found "that the single word amendment by the General Assembly was nuanced in nature and did not produce a sea-change in the manner in which these petitions are to be evaluated by this Court." Id. at 327, 757 S.E.2d at 570. Considering the change in words "nuanced," we held that

> in the wake of the amendment, a finding by this Court that "no rational trier of fact *would* have found proof of guilt beyond a reasonable doubt" unequivocally continues to require a finding by this Court that a petitioner has affirmatively established that he is *factually innocent* of the crime for which he was convicted and that the statute as amended mandates that our standard of review for granting these petitions and issuing a writ of actual innocence is that, if provided with all of the evidence, both old and new, *any* reasonable jury applying the relevant law is obliged to conclude as much.

Id. at 328, 757 S.E.2d at 570. We recognize that this holding has been implicitly overruled by the Supreme Court's decision in Watford. "A decision of one panel protected by the interpanel accord doctrine 'cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" White v. Commonwealth, 67 Va. App. 599, 612 n.7, 798 S.E.2d 818, 824 n.7 (2017) (quoting Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003)).

evidence in the current record, will prove that no rational trier of fact would have found proof of guilt beyond a reasonable doubt." Code § 19.2-327.11(A)(vii).

Fourth, and finally, we must consider whether the newly-discovered evidence is "merely cumulative, corroborative or collateral." Code § 19.2-327.11(A)(viii). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985). Here, the newly-discovered evidence is clearly not cumulative, as there was no evidence at trial in relation to Amos' confession. Corroborative evidence "is evidence that does not emanate from the defendant's mouth, does not rest wholly upon the defendant's credibility, but . . . adds to, strengthens, and confirms [the] defendant's testimony." Id. at 443, 337 S.E.2d at 758. Bush's testimony at trial was that he was not involved in the robberies and was elsewhere when they were committed. Amos' confession did not strengthen or confirm this testimony, and thus is not corroborative evidence. Further, collateral evidence is evidence "from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation." Helmick v. Commonwealth, 38 Va. App. 558, 564, 567 S.E. 2d 551, 554-55 (2002) (quoting Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982)). Amos' confession tends to directly prove or disprove Bush's guilt of the crimes for which he was convicted, and therefore the evidence is not collateral as to Bush's factual innocence.

After reviewing the relevant clauses under Code § 19.2-327.11(A),[5] we find that Bush has proven by clear and convincing evidence the allegations contained therein.[6]

CONCLUSION

We hold that Bush has met his burden, under Code §§ 19.2-327.10 through -327.14, of establishing that he is actually innocent of the crimes for which he was convicted. Accordingly, pursuant to Code § 19.2-327.13, this Court grants Bush's petitions and issues writs of actual innocence based on non-biological evidence, thereby vacating his two convictions for robbery. If there is no appeal from this judgment to the Supreme Court, the clerk shall forward a copy of this writ to each circuit court, where an order of expungement shall be immediately entered regarding the offense at issue.

This order shall be published.

A Copy,

Teste:
*original order signed by the Clerk of the Court of Appeals of Virginia at the direction of the Court*

Cynthia L. McCoy, Clerk

---

[5] As stated above in this order, the General Assembly amended Code § 19.2-327.13 in the same manner at the same time. Code § 19.2-327.13 provides that this Court may grant the writ "only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, *and* upon a finding that no rational trier of fact *would* have found proof of guilt or delinquency beyond a reasonable doubt." (Emphases added). As we make the "no rational trier of fact would have found proof of guilt" determination under clause (vii) of Code § 19.2-327.11(A), we find it unnecessary to examine this requirement as a separate finding under Code § 19.2-327.13. See Montgomery, 62 Va. App. at 672-73, 751 S.E.2d at 700 (2013) (granting a petition for actual innocence after examining the four requisite clauses under Code § 19.2-327.11(A)(vii)).

[6] We emphasize that we make this determination based upon the unique circumstances of these cases. In doing so, we do not hold that another individual's confession to a crime, along with other accompanying circumstances, necessarily provides clear and convincing evidence to satisfy the non-biological actual innocence statutes, Code §§ 19.2-327.10 to -327.14. If the newly-discovered evidence proffered by a petitioner is another individual's confession to the crime to which petitioner was convicted, this confession does not mandate that the petition be granted; rather, the confession must be evaluated, as with all newly-discovered evidence, to determine if it provides clear and convincing evidence to satisfy the clauses under Code § 19.2-327.11(A).