PUBLISHED

## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **10th** *day of* **August, 2021**.

Daryl O. Tyler,                                                                                             Petitioner,

against            Record No. 0838-20-1

Commonwealth of Virginia,                                                                          Respondent.

Upon a Petition for a Writ of Actual Innocence

Before Judges Humphreys, Huff, and Russell

Daryl O. Tyler seeks a Writ of Actual Innocence pursuant to Chapter 19.3 of Title 19.2 of the Code of Virginia. In March 2017, following a bench trial, the Circuit Court of Gloucester County convicted Tyler of misdemeanor assault and battery and felony strangulation. By final order of May 26, 2017, the trial court sentenced Tyler to five years in prison for the strangulation and twelve months in jail for the misdemeanor assault and battery.

In his July 22, 2020 petition, Tyler asserts that he is actually innocent of strangulation.[1] He specifically contends that he is entitled to relief based on the affidavit of a non-testifying witness who was present during the "physical altercation" from which Tyler's conviction arose and now avers that he did not see Tyler "strangle or choke" the victim. Tyler's petition also includes a newspaper report that, in May 2020, the victim was indicted on a charge of malicious wounding for an unrelated incident that occurred in December 2019. The Attorney General filed a response to the petition and Tyler, represented by counsel, has filed a reply. After considering the parties' arguments and the entire record, we conclude that Tyler is not entitled to a writ of actual innocence.

---

[1] Tyler does not challenge his conviction for misdemeanor assault and battery; this Court lacks jurisdiction to consider a claim of actual innocence for a misdemeanor conviction. See Code § 19.2-327.10.

## BACKGROUND

On the night of September 29, 2016, Craig Berry ("Craig"), Rogdrick Berry ("Rogdrick"),[2] and Tyler picked up Carmella Rosell from her residence. Craig was driving, Tyler was in the front passenger seat, and Rogdrick and Rosell were in the back seat. The group planned to go to a strip club but first stopped at Wawa on the way to use the ATM.

At Wawa, Craig and Rogdrick went into the store while Tyler and Rosell stayed in Craig's truck. According to Rosell, Tyler propositioned her.[3] When she rebuffed his advances, Tyler offered Rosell money to have sex with him. Craig and Rogdrick then returned to the truck, and the four proceeded to a 7-Eleven. At 7-Eleven, Tyler got out of the truck to speak with friends in the parking lot. While Tyler was out of the truck, Rosell told Craig and Rogdrick of Tyler's advances and stated that she was uncomfortable in his presence. Craig, Rogdrick, and Rosell then decided to tell Tyler (falsely) that they intended to go home and would drop him off. Rosell stated that Craig and Rogdrick tasked her with telling Tyler that they were going home. Upon hearing this, Tyler "freaked out" and began yelling, accusing the group of lying to him.

Tyler asked to be taken to a friend's house and once there, Craig parked in the driveway. Tyler got out and disappeared briefly, but soon returned to the truck and got back in. Tyler was upset and asked to be driven to another location. Tyler and Craig began arguing, and Tyler grabbed the keys from the ignition. When the altercation between Craig and Tyler "escalat[ed]," Rosell "got in the middle and tried to . . . push both of them apart." Tyler responded by hitting her with his fists, "tr[ying] to choke" her, and biting her. Rogdrick tried to "crawl across" Rosell to stop Tyler from hitting her. Rogdrick then pulled her out of the truck to try to stop the attack, but Tyler got out and resumed punching Rosell in the face.

Rosell got back into the truck and attempted to use Rogdrick's cell phone to call the police. Tyler climbed on top of her and attempted to grab the phone, and she let him take it to prevent it from breaking.

---

[2] Craig is Rogdrick's uncle.

[3] Rosell had met Tyler only once before.

-2-

When Tyler grabbed the phone, he had his other hand on Rosell's neck and "was pulling [her] neck back." Because Rosell was lying on her stomach, she could feel her "bone straining in the back of [her] neck" and could not "breathe at all." While Tyler was choking her, she felt dizzy and believed that she "was going to die that night." Rosell eventually was able to get Tyler's hand off her neck.

After the altercation, Craig dropped Tyler off at his sister-in-law's house and then drove Rosell and Rogdrick to the Gloucester County Sheriff's Office.[4] Rosell reported the assault to Deputy Dylan Moore, who took verbal and written statements from Rosell, Craig, and Rogdrick. Moore also photographed Rosell's injuries; the photographs, which were admitted into evidence at Tyler's trial, depicted bruises on Rosell's face, marks on her throat and neck, a bite mark on her arm, and a broken shirt strap. Rosell went to the hospital a week later because she thought her jaw might be dislocated and she "had been having problems with the back of [her] neck."[5] Rosell continued to suffer from frequent headaches and had difficulty talking and eating for approximately two weeks after the attack.

Craig and Tyler, testifying for the defense,[6] gave a materially different account of the altercation. Craig denied that he and Tyler had had an "argument"; rather, Tyler took the truck keys because "he didn't want to go home" but Craig wanted to leave because he had to work the next morning. Rosell then told Tyler to return Craig's keys. Tyler and Rosell then got "into a little argument" and the next thing Craig knew, Rosell, Tyler, and Rogdrick had exited the truck and Tyler and Rosell got into "a fist fight." Tyler hit Rosell "once or twice," and she also hit him. After the fight was over, "[t]hey got back in the truck and [they] left."

Craig testified that he never saw Rogdrick lay on top of Rosell to shield her from Tyler. Craig also stated that Tyler never choked or strangled Rosell during the fight. According to Craig, Rosell threatened to

---

[4] On the way to Tyler's sister-in-law's house, Rosell called her grandmother, and Tyler demanded to see the phone to ensure that Rosell was not calling the police.

[5] Rosell stated that she did not go to the hospital right away because she was unable to get a ride.

[6] Tyler also sought to call Sheila Branch to testify about Rosell's purported reputation for untruthfulness in the community; the trial court concluded that Branch's proffered testimony was inadmissible because it was not proper impeachment evidence.

-3-

press charges against Craig if he did not take her to the sheriff's office. Craig stated that his motivation in taking Rosell to the sheriff's office and making a statement was to get home and go to bed because he had to work the next morning.

On cross-examination, Craig confirmed that he had provided the sheriff's office with a written statement relaying that Tyler "started beating the young girl for no reason at all," and that Craig did not tell Deputy Moore that Rosell threatened to press charges against him if he did not take her to the sheriff's office. Craig also confirmed that Tyler was his cousin.

According to Tyler, when the group arrived at his friend's residence, they all still planned to go to the strip club; he and Craig also intended to go to a "get-together" after the strip club. Tyler and Craig then got into a "little argument," and, after Craig got upset, Tyler took the keys out of the ignition and told Craig he would "give [him] [his] keys in a minute." At that point Rosell, who was in the back seat, grabbed Tyler's neck, hit him, and cut his arm with what he thought was a knife. After he "jumped out of the car" to get away from Rosell, she came out after him, grabbed him, and told him that he was "better than this." Tyler responded that Rosell was "crazy."

Tyler stated that, to the extent he struck Rosell, he did so in self-defense. He categorically denied strangling or choking her and denied, in contradiction to Craig's testimony, hitting her with his fists.[7] When Tyler learned that there was a warrant for his arrest, he turned himself in to the authorities. On cross-examination, Tyler confirmed that he had asserted in his written statement to law enforcement that Craig had attacked him, but he contended that his testimony on direct examination was substantially consistent with his written statement.

Rogdrick did not testify at the trial. In arguing Tyler's motion to strike after the close of all the evidence, defense counsel stated that the defense "[did not] know where Rogdrick" was and did not know how to find him, but did not explain what steps had been taken to locate Rogdrick. Defense counsel also

---

[7] Tyler stated that if he had hit Rosell in the face with his fist, her face would have looked different than it did in the photographs.

stated, without elaboration, that he had to "track . . . down" Craig to secure his testimony. Trial counsel did not ask for a continuance to allow him additional time to locate Rogdrick. In addition to arguing that the trial court should not credit Rosell's testimony that Tyler had strangled her, Tyler asserted that any physical contact with Rosell was in self-defense.

The trial court convicted Tyler on both counts "[c]onsidering the relative size of [Tyler] and [Rosell] and the photographs of the injuries as well as the credibility of the witnesses . . . ." Tyler moved to set aside the verdict and for a new trial, arguing that the trial court's ruling excluding Branch's testimony improperly denied him the ability to fully impeach Rosell's credibility. The trial court denied the motion, explaining that it had heard the testimony of the witnesses, "considered all the credibility," and would have reached the same conclusion if it had considered the proffered impeachment evidence.

Tyler appealed his convictions to this Court, where he asserted that the evidence was insufficient to support the verdict and that the trial court abused its discretion by excluding the proffered testimony attacking Rosell's reputation for truthfulness. This Court denied Tyler's petition for appeal, Tyler v. Commonwealth, No. 0923-17-1 (Dec. 15, 2017), and the Supreme Court of Virginia refused further appeal, Tyler v. Commonwealth, No. 191040 (Feb. 24, 2020).

PETITION FOR A WRIT OF ACTUAL INNOCENCE

In support of his claim of actual innocence, Tyler proffers Rogdrick's statements in an affidavit attesting that Rogdrick never saw Tyler choke Rosell during the altercation on the evening of September 29, 2016. He also relies upon a newspaper report that Rosell was indicted in May 2020 for malicious wounding in an unrelated incident that occurred in December 2019. Tyler argues that this evidence, taken with all the other evidence in the record, shows that no rational trier of fact would have convicted him of strangulation.

He also contends that the evidence presented at trial was insufficient to support his conviction for strangulation.[8]

As directed by this Court, the Attorney General filed a response to the petition on behalf of the Commonwealth. The Commonwealth interviewed Rogdrick, Craig, and Rosell in November and December 2020 and attached written summaries of these interviews to its response.[9] In his interview, Rogdrick stated that, while Craig and Tyler were fighting in the front seat of the truck, Rosell held a lighter flame on Tyler's arm; Tyler then assaulted Rosell. Rogdrick stated that he observed the entire altercation between the two and never saw Tyler choke Rosell. Although Rogdrick tried to break up the fight between Tyler and Rosell, they ultimately stopped fighting on their own. Rogdrick explained that he was living at the same house in Gloucester County with Craig during Tyler's trial, but he did not attend the trial or come forward with his testimony because he was experiencing personal issues at the time.

Craig reviewed his trial testimony during his interview and "stated he didn't have anything to add and that his trial testimony was an accurate representation of the events that took place." Craig also stated that "everyone had been drinking that evening." Craig confirmed that, at one point during the affray, Rogdrick lay across Rosell to try to stop the fight. In her interview, Rosell reiterated that Tyler laid on top of her and choked her while he was hitting her, and that she could not breathe while he was choking her.

The Commonwealth attached several other exhibits to its response, including the Gloucester County Sheriff's Office "Offense/Incident Report" completed by Deputy Moore and the Voluntary Statement Forms that Rogdrick, Craig, and Rosell completed at the sheriff's office on the night of the incident. The response also included the transcript of the preliminary hearing in Tyler's criminal case and the witness subpoena for Craig. The Commonwealth further attached a docket sheet from the Gloucester County Circuit Court

---

[8] To the extent that Tyler seeks to argue that his conviction was not supported by sufficient evidence, such a legal claim is not cognizable in a petition for a writ of actual innocence. See In re Neal, 44 Va. App. 89, 90 (2004).

[9] The Commonwealth also submitted the audio recording of Rogdrick's interview at Tyler's request. Rogdrick's November 2020 interview was conducted by Special Agent Greene.

-6-

indicating that Rosell was indicted for malicious wounding on May 4, 2020, and pled guilty to misdemeanor assault and battery.

According to the incident report, Craig and Rogdrick both told Moore that "Tyler had no reason to assault" Rosell "the way he did." They also told Moore that they had "witnessed" the strangulation. In his written statement at the sheriff's office, Rogdrick averred that Tyler "kept beating" Rosell "for no reason at all" and that he saw Tyler "choking her out." Craig's written statement similarly indicated that Tyler "started beating" Rosell "for no reason at all." The incident report contains phone numbers for both Craig and Rogdrick and details that they lived together at the same residence on Hickory Fork Road in Gloucester.[10]

The Commonwealth argues that Tyler is not entitled to relief because he could have obtained Rogdrick's testimony through the exercise of diligence before his conviction became final in the trial court. The Commonwealth further asserts that Rosell's indictment and subsequent conviction for an unrelated incident in December 2019 is immaterial to Tyler's claim of innocence and that, even if Rogdrick's affidavit is credible, Tyler has failed to show that no rational finder of fact would find him guilty of strangulation.

In reply, Tyler argues that Rogdrick's affidavit was unavailable before the strangulation conviction became final because trial counsel tried but failed to locate Rogdrick. On the merits, Tyler asserts that Rogdrick's affidavit "establishes for the first time that every witness—other than Rosell—swore under oath that although Tyler did strike Rosell, he did not strangle her." Tyler contends that Rogdrick's contrary statement at the sheriff's office is explained by Rosell's threat to bring charges against Craig if he did not take her to the police station, and that as "Rosell's then-boyfriend," Rogdrick "undoubtedly felt pressure to comply with her version of events."

---

[10] From the record, the listed address appears to be in error as the incident report lists the address as 4479 Hickory Fork Road and all subsequent communications with either Craig or Rogdrick, including the subpoena for Craig's trial appearance and Rogdrick's interview with Special Agent Greene, involved a residence at 6410 Hickory Fork Road.

## ANALYSIS

### I. Original jurisdiction

"Code § 19.2-327.10 confers original jurisdiction upon this Court to consider a petition for a writ of actual innocence based on non-biological evidence." Phillips v. Commonwealth, 69 Va. App. 555, 562 (2018) (quoting Bush v. Commonwealth, 68 Va. App. 797, 803 (2018)). Because such cases fall within our original as opposed to our appellate jurisdiction, our role differs from when we hear an appeal that comes to us pursuant to Code §§ 17.1-405 or 17.1-406. Because the petition is filed with us in the first instance, we are not reviewing a judgment below in the traditional appellate sense, and consequently, there is no appellate standard of review to apply. Rather, actual innocence petitions "present[] one of the rare situations in which the General Assembly has charged an appellate court with engaging in factual evaluation." Dennis v. Commonwealth, 297 Va. 104, 127 (2019). Sitting "as a court of original jurisdiction[,]" we have "the same authority to weigh and evaluate documentary and physical evidence as a trial court would have." Haas v. Commonwealth, 283 Va. 284, 292 (2012).[11]

In exercising our jurisdiction, we *are* charged with reviewing "the record of any trial or appellate court action" underlying the challenged conviction, Code § 19.2-327.11(D), as well as "the petition, the response by the Commonwealth, previous records of the case, the record of any hearing held under this chapter, and, if applicable, any findings certified from the circuit court pursuant to an order issued under this chapter[.]" Code § 19.2-327.13. These reviews, however, are undertaken to allow us to perform the fact-finding function the General Assembly assigned us in the statutory scheme—determining whether the petitioner has produced sufficient new evidence to establish the statutory requirements to the requisite level of proof to warrant overturning a presumptively valid conviction.

---

[11] This remains true even in those cases where we remand the matter to the circuit court for "further development of the facts" pursuant to Code § 19.2-327.12. In such instances, "the role of the circuit courts is to assist this Court in our factfinding function—not to supplant it." Dennis v. Commonwealth, 71 Va. App. 626, 648 (2020) (Humphreys, J., concurring).

II. The 2020 legislative amendments and a petitioner's burden

The General Assembly created the writ of actual innocence for claims based on non-biological evidence in 2004. 2004 Va. Acts ch. 1024 (amending the Code to add Code § 19.2-327.10 *et seq*.). In doing so, the General Assembly created a vehicle by which a person convicted of a felony could challenge a conviction using non-biological evidence discovered after his conviction became final in the trial court. In conducting the review, we begin with the presumption that Tyler's conviction, the result of a full criminal trial that has been affirmed on direct appeal, is correct. In re Carpitcher, 47 Va. App. 513, 525 (2006), aff'd, Carpitcher v. Commonwealth, 273 Va. 335 (2007) (requiring a petitioner to overcome that presumption with sufficient evidence to support his claim of innocence).

From the creation of the writ, the burden of proof in writ proceedings has fallen upon the petitioner seeking to establish his innocence. Code § 19.2-327.13. Prior to July 1, 2020, that burden required a petitioner to prove, "by clear and convincing evidence[,]" id., many things, including that his petition was based on evidence that was unknown or unavailable to him or his counsel and that such new evidence could not have been discovered through the exercise of diligence before the conviction in the trial court became final; that such new evidence, when considered in conjunction with all of the record evidence, established that no rational factfinder would have concluded beyond a reasonable doubt that the petitioner was guilty of the offense of conviction;[12] and that such new evidence was not merely cumulative, corroborative, or collateral. Code §§ 19.2-327.11(A) and 19.2-327.13.

---

[12] Prior to July 1, 2013, a petitioner was required to prove that no jury *could*, as opposed to *would*, have concluded that he was guilty beyond a reasonable doubt. See Va. Acts ch. 180. As the Supreme Court has explained,

> By changing "could" to "would," the General Assembly . . . fundamentally changed the nature of our inquiry in actual innocence cases. The General Assembly's amendment of the actual innocence statutes has shifted the focus from the jury's raw ability to convict (the "could" standard) to the jury's volition to convict (the "would" standard), thereby significantly broadening the scope of our review in considering whether or not to grant a writ of actual innocence. Through the use of the word "would," the General Assembly has directed us to examine the probative force of the newly presented evidence in

In 2020, the General Assembly amended Code § 19.2-327.13 to alter the quantum of proof needed to entitle a petitioner to a writ. Specifically, the General Assembly eliminated the requirement that the petitioner establish the necessary facts "by clear and convincing evidence," changing the required quantum of proof to "a preponderance of the evidence[.]" 2020 Va. Acts chs. 993, 994.

This legislative change lessens the quantum of proof necessary to meet a petitioner's burden. The "clear and convincing evidence" standard requires a litigant to produce evidence sufficient "to render the assertion to be proved '*highly probable or reasonably certain.*'" In re Brown, 295 Va. 202, 228 (2018) (quoting Black's Law Dictionary 674 (10th ed. 2014)). It "cannot be met with evidence that leaves competing inferences equally probable." Madison v. Commonwealth, 71 Va. App. 678, 692 (2020) (quoting Brown, 295 Va. at 227) (some quotation marks omitted). Significantly, "'[m]ore likely than not' proof falls short of [the clear and convincing evidence] standard, as does, all the more, a mere evidentiary equipoise." Brown, 295 Va. at 228 (citation omitted).

In contrast, the preponderance of the evidence standard imposes a lesser burden. Sometimes referred to as the "greater weight of the evidence," the preponderance standard is satisfied when the evidence convinces a factfinder that a particular fact in dispute was "more probable than not[.]" Lysable Transp., Inc. v. Patton, 57 Va. App. 408, 419 (2010).[13] Thus, although evidence in equipoise fails to meet either standard,

<div style="margin-left: 2em;">

connection with the evidence of guilt adduced at trial. Thus, we are required to look beyond whether the evidence is sufficient to sustain the conviction; we must also examine the likelihood of a reasonable juror finding the petitioner guilty beyond a reasonable doubt once all of the evidence has been fairly considered.

</div>

In re Watford, 295 Va. 114, 123-24 (2018) (internal quotation marks, citations, and footnote omitted).

[13] Given that cases describing evidentiary standards use mathematical sounding phrases, *e.g.*, "more likely than not," "more probable than not," etc., some seek mathematical precision in terms of percentages or view the standards as benefitting the party who calls the largest number of witnesses in support of his cause. Such efforts and views are mistaken. Whether a particular quantum of proof, regardless of which standard is to be applied, has been met presents a qualitative and not a quantitative question. Gulfstream Bldg. Assocs., Inc. v. Britt, 239 Va. 178, 184 (1990) (holding that "it is the quality, not the quantity, of the evidence which determines whether a particular standard of proof is met"). Thus, "[t]he preponderance of the evidence does not necessarily mean a greater number of witnesses." Smyth-Bros.-McCleary-McClellan Co. v. Beresford,

"'more likely than not' proof[,]" Brown, 295 Va. at 228, is now sufficient to carry a petitioner's burden in a writ of actual innocence proceeding.

In recognizing that the 2020 legislative amendments lessened the *quantum* of proof required for Tyler to carry his burden on the issues he must prove to be entitled to a writ, it is equally important to recognize that the 2020 amendments did not change *what* Tyler must prove in this case.[14] Specifically, to be entitled to the writ, he still must prove that the evidence on which his petition is based "was previously unknown or unavailable to [him] or his trial attorney of record at the time the conviction . . . became final in the [trial] court[,]" Code § 19.2-327.11(A)(iv)(a); "the date . . . the previously unknown or unavailable evidence became known or available to the petitioner and the circumstances under which it was discovered[,]" Code § 19.2-327.11(A)(v)(a); "that the previously unknown or unavailable evidence is such as could not, by the exercise of diligence, have been discovered or obtained before" his conviction became final in the trial court[,] Code § 19.2-327.11(A)(vi)(a); "that the previously unknown, unavailable, or untested evidence is material and, when considered with all of the other evidence in the current record, will prove that no rational trier of fact would have found proof of guilt . . . beyond a reasonable doubt[,]" Code § 19.2-327.11(A)(vii); and "that the previously unknown, unavailable, or untested evidence is not merely cumulative, corroborative, or collateral." Code § 19.2-327.11(A)(viii).

Because the General Assembly has mandated that a petitioner must prove "all of the allegations contained in clauses (iv) through (viii) of subsection A of 19.2-327.11," Code § 19.2-327.13, a failure of

128 Va. 137, 156 (1920) (approving jury instruction containing quoted language as a correct statement of the law). See also Bacigal, Ivey, & Lain, Virginia Practice: Jury Instructions, § 11:1 (2020) (recognizing that "[t]he testimony of one witness in whom the [factfinder] has confidence may constitute a preponderance"); Virginia Model Jury Instructions-Civil, § 3.100 (2020) (noting that "[t]he testimony of one witness whom [a factfinder] believe[s] can be the greater weight of the evidence").

[14] The 2020 amendments did change other aspects of the statutory scheme, to include establishing what a petitioner needs to prove regarding the unavailability of and circumstances surrounding claims based on scientific testing. Tyler does not raise such a claim, and thus, those changes are immaterial to the issues before us.

Tyler to establish any one of the required facts requires us to dismiss his petition. As detailed below, Tyler has failed to establish several of the required facts.

### III. Rogdrick's affidavit

Central to Tyler's actual innocence claim is Rogdrick's November 14, 2019 affidavit. He asserts that Rogdrick's version of events as described in the affidavit is consistent with his own trial testimony and the trial testimony of Craig and that, if accepted as true by the trier of fact, exonerates him of the strangulation offense. The questions before us, however, are whether the affidavit constitutes the type of "new" evidence that will support a petition for actual innocence, whether the affidavit represents evidence that is not merely cumulative or corroborative of evidence introduced at trial, and whether the evidence is such that, had it been introduced at trial, no rational trier of fact would have convicted Tyler of strangulation. We address each question in turn.

### A. Affidavit as new evidence

Petitions for actual innocence require "new" evidence. To constitute "new" evidence that will support a petition for actual innocence, the substance of Rogdrick's affidavit must satisfy two distinct requirements. First, it must have been "unknown or unavailable to [Tyler] or his trial attorney . . . at the time the conviction . . . became final in the [trial] court[,]" Code § 19.2-327.11(A)(iv)(a). Additionally, it also must constitute evidence that "could not, by the exercise of diligence, have been discovered or obtained before" his conviction became final in the trial court. Code § 19.2-327.11(A)(vi)(a). Tyler asserts "[t]he evidence in Rogdrick's affidavit was unavailable at the time of trial and could not have been obtained within 21 days of the final order's entry" in the trial court. We disagree.

Although in some sense Rogdrick's current version of events may have been unknown to Tyler and his counsel at the time of trial, Rogdrick's existence, identity, and his role as an eyewitness were known. Tyler knew who Rogdrick was and knew that he was present in the car. Thus, in a very real sense, Rogdrick's version of events was knowable at the time of trial; he simply needed to be called as a witness.

Even if we were to accept that Rogdrick's version of events was unknown and unavailable to Tyler or his counsel at the time his conviction became final in the trial court, Tyler has not carried his burden to prove that the evidence "could not by the exercise of *diligence*, have been discovered or obtained before" that time. Code § 19.2-327.11(A)(vi)(a) (emphasis added). Although Tyler notes that his trial counsel averred at trial that he had tried and failed to locate Rogdrick, the record does not specify what, if any efforts, were actually made. In fact, any reading of the record conclusively establishes that any efforts to have Rogdrick testify at trial were less than diligent.

In the context of the actual innocence statutes, we have defined diligence as a "devoted and painstaking application to accomplish an undertaking." Madison, 71 Va. App. at 702 n.14. In Madison, a petitioner claimed that an uncooperative eyewitness' version of events was unavailable to him at his trial. Id. Given that the eyewitness' address was known, we concluded that the petitioner's failure to speak with him before trial and/or reliance on a subpoena that had been issued by the Commonwealth did not meet the diligence standard. Id. The record here demonstrates Tyler was less diligent than Madison in seeking the purportedly missing eyewitness account.

After all, the police report created the night of the incident contains not only a phone number for Rogdrick, but also reflects that he resided with Craig on Hickory Fork Road. The record established he resided with Craig throughout the trial and still lived with Craig at the residence on Hickory Fork Road years later when Special Agent Greene interviewed him in November 2020. Despite having this information, Tyler never requested a trial subpoena be issued for Rogdrick.[15] Given that reliance upon an issued subpoena will not always satisfy the diligence standard, id., the failure to even request a subpoena for a known witness demonstrates a complete lack of diligence.

---

[15] Given Rogdrick's written statement to police on the night of the incident that he witnessed Tyler "choking [Rosell] out[,]" the decision of the defense not to subpoena Rogdrick as a trial witness is understandable.

This lack of diligence is underscored by the fact that Tyler was able to obtain the trial testimony of Craig by issuing a subpoena for Craig. Tyler and his counsel possessed the same address information for Rogdrick that they possessed for Craig. From the police report, they knew both eyewitnesses lived together on Hickory Fork Road and, using that information, were able to force Craig, despite his lack of willing cooperation,[16] to appear at trial by having him subpoenaed. Despite possessing the exact same information regarding Rogdrick, no similar effort was made and no subpoena was requested to compel his appearance. Regardless of the reason, the failure even to request a subpoena for Rogdrick's appearance represents far less than a "devoted and painstaking application to" have his version of events heard at trial. Id.

Accordingly, for the reasons stated, we find that Tyler has not carried his burden to establish that Rogdrick's affidavit constitutes new evidence meeting the requirements set forth in Code §§ 19.2-327.11(A)(iv)(a) and 19.2-327.11(A)(vi)(a). Our conclusion in this regard provides a sufficient basis for dismissing Tyler's petition, and, if the matter were before us pursuant to our appellate jurisdiction, likely would end our analysis. See Matzuk v. Price, 70 Va. App. 474, 485 n.8 (2019) (noting "that *appellate* courts decide cases on the best and narrowest grounds available") (emphasis added) (internal quotation marks and citations omitted). Because we are sitting as a court of original jurisdiction charged with making factual findings, we find it appropriate to address other arguments Tyler raises in order to make factual findings related to those arguments in context. Accordingly, we consider those arguments below.

B. Affidavit as merely cumulative, corroborative, or collateral

In addition to failing to constitute previously unknown or unavailable evidence for the purposes of Code § 19.2-327.11, Tyler has failed to establish that Rogdrick's affidavit is anything more than "merely cumulative, corroborative, or collateral" as required by Code § 19.2-327.11(A)(viii). Specifically, although the contents of Rogdrick's affidavit are not collateral to the underlying conviction, the contents are merely cumulative and corroborative of evidence at trial that permissibly was rejected by the factfinder.

---

[16] In his reply in this matter, Tyler characterizes Craig as an uncooperative and unwilling trial witness whose ultimate appearance was the result of the subpoena.

"Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." Bush, 68 Va. App. at 809-10 (quoting Massey v. Commonwealth, 230 Va. 436, 442 (1985)). As such, when determining whether evidence is cumulative, a court looks not to "the effect to be produced" by the evidence, "but rather to *the kind and character of the facts*." Commonwealth v. Profitt, 292 Va. 626, 640 (2016) (quoting St. John v. Alderson, 73 Va. (32 Gratt.) 140, 143 (1879)). "Corroborative evidence 'is evidence that does not emanate from the defendant's mouth, does not rest wholly upon the defendant's credibility, but . . . adds to, strengthens, and confirms [the] defendant's testimony.'" Bush, 68 Va. App. at 810 (alterations in original) (quoting Massey, 230 Va. at 443). Applying these definitions to the contents of Rogdrick's affidavit and the evidence at trial, it becomes clear that Rogdrick's affidavit is merely cumulative and corroborative.

Based on the entire record, four people were present during the affray. At trial, Rosell testified unequivocally that Tyler repeatedly choked her; Craig and Tyler testified that Tyler did not choke her; and Rogdrick did not testify. Having heard all the trial testimony, and considering "the relative size[s]" of Tyler and Rosell and the pictures of Rosell's injuries, the trial court credited Rosell's testimony. Tyler is correct that Rogdrick's proffered assertion in his affidavit that Tyler did not choke Rosell is consistent with Craig and Tyler's trial testimony, and that Rosell is the only witness who testified Tyler choked her; however, it is equally true that Rogdrick's affidavit is of the same kind and character as Craig's testimony on the issue of whether Tyler strangled Rosell. Bush, 68 Va. App. at 809-10. Both men were, for lack of a better description, "neutral" eyewitnesses, meaning neither was the victim or the defendant. Both give versions of the facts that conflict with the victim's version and with what the trial court found the pictures showed.

Although there may be circumstances in which the discovery of a previously unknown or unavailable "neutral" witness is not merely cumulative because all of the prior evidence came from "interested" witnesses, namely the victim and the defendant, that is not the situation here. The factfinder heard from such a neutral witness when Craig testified at trial and rejected his version of events based on the physical evidence and credibility findings. There is no indication in the record that Rogdrick was in a better position

than Craig to witness or describe the events. Other than disputing Rosell's account from which she has never wavered, nothing in the affidavit gives an independent reason to undermine Rosell's version that was accepted by the factfinder. Thus, the only real benefit of adding Rogdrick's affidavit to the evidentiary mix is to increase the quantity as opposed to the quality of the evidence Tyler offers in his defense. Because evidentiary standards turn on the quality and not the quantity of the evidence presented, see fn. 13 *supra*, we find that Rogdrick's affidavit is merely cumulative and is insufficient to satisfy Tyler's burden of proof.

Similarly, Rogdrick's affidavit, like Craig's trial testimony, is corroborative of Tyler's trial testimony because its value, if any, is to "add[] to, strengthen[], and confirm[] [Tyler's] testimony." Bush, 68 Va. App. at 810; see also In re Barron, 44 Va. App. 536, 539 (2004) (finding a petitioner was not entitled to writ of actual innocence based on an emergency department report because the information contained in it was cumulative of the Commonwealth's evidence and merely corroborated trial testimony from an emergency department nurse). That version of events was heard and rejected by the factfinder, and nothing in the proposed affidavit, other than increasing the quantity of evidence offered, suggests a different result. With or without Rogdrick's affidavit, a factfinder would be faced with the same conflicting versions of events to resolve. As a result, we find that the proffered affidavit is merely corroborative of evidence considered at trial.

Because the evidence contained in the affidavit falls within the definitions of cumulative and corroborative set forth above, we find that Tyler has failed to prove by a preponderance of the evidence that the evidence he contends was previously unknown or unavailable was anything more than "merely cumulative [or] corroborative[.]" Code § 19.2-327.11(A)(viii); Bush, 68 Va. App. at 809. Consequently, Tyler has failed to establish a necessary fact in support of his petition, requiring us to dismiss his petition.

### C. Affidavit as proof that no rational trier of fact would have found proof of guilt beyond a reasonable doubt

Even if Tyler had established that Rogdrick's affidavit constituted previously unknown or unavailable evidence that could not have been discovered timely through the exercise of diligence and that it was not

merely cumulative or corroborative of evidence at trial, he still would be required to prove the affidavit is such "that *no* rational trier of fact would have found proof of guilt . . . beyond a reasonable doubt" if presented with it along with the evidence at trial. Code § 19.2-327.11(A)(vii) (emphasis added). See Knight v. Commonwealth, 71 Va. App. 492, 509 (2020) ("We assess the evidence and proffers individually under Code § 19.2-327.11(A), and then consider the totality of the evidence [the petitioner] has presented in support of his claim of innocence."). We find that Tyler's evidence does not satisfy his burden of proof on this issue.

Even with the reduction in the quantum of proof to the preponderance of the evidence standard, a petitioner such as Tyler is still faced with a daunting task to satisfy Code § 19.2-327.11(A)(vii). The statute still requires Tyler to prove that "*no* rational trier of fact would have found" him guilty if aware of Rogdrick's affidavit. Id. (emphasis added). Thus, it is not enough for Tyler to convince us that some, many, or even most rational factfinders would have acquitted him if presented with the version of events laid out in Rogdrick's affidavit along with the evidence adduced at trial. He must prove that *every* rational factfinder would have done so.

Based on this record, he has failed to carry his burden in this regard. There can be no dispute that, if believed, Rosell's testimony alone provides a sufficient basis to permit a rational factfinder to conclude, beyond a reasonable doubt, that Tyler was guilty of the strangulation offense. We recognize that in determining whether a petitioner has satisfied the burden imposed by Code § 19.2-327.11(A)(vii), we are not conducting a sufficiency inquiry, but rather, we are called upon to determine whether *any* rational factfinder would have found Tyler "guilty beyond a reasonable doubt once all of the evidence[,]" including Rogdrick's affidavit, is "fairly considered." In re Watford, 295 Va. at 123-24. Thus, the question becomes whether *every* rational factfinder presented with Rogdrick's affidavit would conclude that Rosell was lying or is otherwise so unworthy of belief as to lead to an acquittal.

In rejecting such a conclusion, we note that factfinders are called upon to resolve conflicting versions of events in trial courts on a near daily basis and the existence of conflicting testimony does not preclude a

finding, beyond a reasonable doubt, that a defendant is guilty of the crime charged. Thus, the fact that Rogdrick's affidavit contradicts the specifics of Rosell's testimony is not dispositive. As noted above, other than disputing Rosell's account, the affidavit does not provide an independent reason to undermine the version of events Rosell provided and that was accepted by the factfinder. It does not suggest a motive for her to have fabricated her account. It does not suggest she has admitted to fabricating her account or been anything other than wholly consistent in her version of events. Thus, at most, the affidavit is evidence on equal footing with Rosell's testimony, which was deemed credible and compelling by a rational factfinder after being subjected to cross-examination and other evidence, subject to weighing by a factfinder. Nothing about it suggests an independent reason that a factfinder would accept it over Rosell's testimony. In short, the affidavit simply provides no basis other than the quantity of evidence argument rejected above for concluding that *every* rational factfinder considering the affidavit along with the trial evidence would have concluded that Rosell lied. As a result, we find that Tyler has failed to prove by a preponderance of the evidence "that no rational trier of fact would have found proof of guilt . . . beyond a reasonable doubt" if presented with Rogdrick's affidavit along with the evidence at trial. Code § 19.2-327.11(A)(vii).

Our conclusion finds additional support in the record. First, we note that, confronted with similar evidence from both Tyler and Craig, the trial court as factfinder rejected that evidence, finding Rosell's testimony credible *and* supported by the physical evidence of injury. Furthermore, we note that, unlike Rosell, Rogdrick's version of events has changed over time. Although he now claims that he never saw Tyler strangle or choke Rosell, he informed police on the night of the incident that he witnessed Tyler "choking her out."[17] Although a rational factfinder could reject the physical evidence, ignore the stark inconsistencies in

---

[17] Tyler acknowledges that Rogdrick has given conflicting versions of the events with Rogdrick's initial statement to police implicating rather than exonerating Tyler. He argues that, pursuant to Code § 19.2-327.12, we should remand the matter to the trial court for "further development of the facts[,]" *i.e.*, a determination of whether, in the opinion of a factfinder, Rogdrick lied then or is lying now. We find such a remand unnecessary because, even if *a* factfinder on remand concluded that it believed Rogdrick's latest version of events, such a finding does not compel the conclusion that *every* factfinder would find Rosell's version of events, which previously has been deemed credible by a rational factfinder, unworthy of belief. See Dennis, 71 Va. App. at 648 (Humphreys, J., concurring) (noting that, after such a remand, this Court may

-18-

Rogdrick's multiple versions of events, ignore that Rosell's account of the attack has remained consistent over the years, and ultimately reach a different credibility finding than did the trial court in this case, nothing in what Tyler has presented us compels the conclusion that it is more likely than not that most, let alone all, rational factfinders would do so. Accordingly, he has failed to sustain his burden of proving by a preponderance of the evidence "that no rational trier of fact would have found proof of guilt . . . beyond a reasonable doubt" if presented with Rogdrick's affidavit along with the evidence at trial. Code § 19.2-327.11(A)(vii).

## IV. Newspaper report of indictment

The other piece of "new" evidence referenced in Tyler's petition is a newspaper report that, in May 2020, Rosell was indicted for malicious wounding for a wholly unrelated incident that occurred in December 2019. In its response, the Commonwealth confirmed the existence of the indictment and reported that the charge was resolved when Rosell pled guilty to the lesser offense of misdemeanor assault and battery. Finding this information to be wholly collateral to the question of whether Tyler committed the strangulation offense three years prior, we conclude that the newspaper report relied upon by Tyler, whether viewed in isolation or in conjunction with all of the other evidence, provides no basis for granting Tyler's petition.

"[C]ollateral evidence is evidence 'from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation.'" Bush, 68 Va. App. at 810 (quoting Helmick v. Commonwealth, 39 Va. App. 558, 564 (2002)). Here, Tyler asks us to infer that because Rosell committed a criminal offense in 2019, it is more likely than not that he did not commit the offense against her in 2016.

The logical flaw in this argument is readily apparent. Victims of crime, at different times and different places, also can be perpetrators of crimes. The fact that Rosell committed a misdemeanor in

be faced with a situation where different factfinders have deemed credible "the testimony of witnesses who point fingers in different directions regarding the identity of the perpetrator of the offense(s)". Even assuming that *a* factfinder would find Rogdrick's latest version of events credible, that fact, when viewed with the record as a whole, would not convince us that it is more likely than not that *every* rational factfinder would reject Rosell's version of events. Accordingly, remand would not assist us in resolving this case.

December 2019 does not in any logical way suggest that she was not a victim of strangulation at the hands of Tyler in 2016. With the exception of Rosell being involved in both criminal acts, once as a victim and once as a perpetrator, the events bear no relation to each other regarding time, place, or other people involved. Simply put, Rosell's subsequent indictment and conviction in an unrelated case do not tend to prove or disprove Tyler's guilt or innocence of strangulation; therefore, it is collateral to the question of Tyler's factual innocence. Bush, 68 Va. App. at 810; cf. Via v. Commonwealth, 42 Va. App. 164, 185-86 (2004) (holding that evidence that did not "directly contradict[]" the victim's testimony was collateral). Finding that the existence of Rosell's subsequent indictment and conviction is merely collateral to the issues before us, it does not provide a basis for the relief sought by Tyler. Code § 19.2-327.11(A)(viii) (establishing that a petitioner's proffered new evidence must be more than "merely . . . collateral").

For the reasons stated above, Tyler has failed to establish by a preponderance of the evidence the necessary facts to entitle him to relief. Accordingly, we dismiss Tyler's petition for a writ of actual innocence.

This order shall be published.

A Copy,

Teste:

*original order signed by the Clerk of the Court of Appeals of Virginia at the direction of the Court*

Clerk

-20-