PUBLISHED

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **26th** *day of* **November, 2024**.

Cody W. Brewer, Petitioner,

against Record No. 0688-23-2

Commonwealth of Virginia, Respondent.

Upon a Petition for a Writ of Actual Innocence

Before Judges Beales, Callins, and Senior Judge Clements

Cody Wyche Brewer, by counsel, filed a petition on April 19, 2023, seeking a writ of actual innocence based on nonbiological evidence, pursuant to the provisions of Chapter 19.3 of Title 19.2 of the Code of Virginia. By final order entered on October 1, 2018, the Circuit Court of the City of Colonial Heights convicted Brewer of identity theft with the intent to defraud, computer fraud, and grand larceny.[1] The circuit court sentenced Brewer to 35 years of incarceration, with 34 years and 11 months suspended.

Brewer contends that he is innocent of the offenses for which he was convicted. In support of his claim, Brewer presents an April 12, 2022 letter and a July 26, 2022 affidavit from his grandmother, Margaret Irby Peade, in which she states that she made false allegations against Brewer and that he actually had her permission to use her bank accounts. Brewer asserts that the proffered materials establish his innocence. The Commonwealth, represented by the Office of the Attorney General, filed a response to the petition, and it moved this Court to dismiss the petition. Brewer's counsel then filed a reply to the Commonwealth's response and its motion to dismiss.

---

[1] After Brewer's convictions, he filed a petition for appeal in this Court, which this Court granted in part and denied in part. *Brewer v. Commonwealth*, No. 1665-18-2 (Va. Ct. App. May 31, 2019) (order). Brewer then filed a demand for consideration by a three-judge panel of this Court, after which the panel denied the remainder of the assignments of error in his petition for appeal. *Brewer v. Commonwealth*, No. 1665-18-2 (Va. Ct. App. Oct. 11, 2019) (order). This Court then heard oral argument in the case, and, by published opinion issued on March 10, 2020, it affirmed the judgment of the circuit court. *Brewer v. Commonwealth*, 71 Va. App. 585 (2020).

We held oral argument on Brewer's petition on March 13, 2024, and, after considering Brewer's petition, the Attorney General's response, Brewer's reply, and the record before this Court, we remanded the matter to the circuit court to conduct an evidentiary hearing and to certify factual findings. *See* Code § 19.2-327.12. *Brewer v. Commonwealth*, No. 0688-23-2 (Va. Ct. App. May 9, 2024) (order). The circuit court conducted an evidentiary hearing, and it supplied this Court with its certified findings of fact. Upon review of the pleadings, the circuit court's clearly stated findings of fact and credibility, and the record before this Court, we hold that Brewer is not entitled to a writ of actual innocence. Consequently, we dismiss his petition.

## I. BACKGROUND

### A. The Evidence Presented to the Circuit Court at Trial

In 2015 and 2016, Cody Wyche Brewer made over a dozen mobile transfers from a SunTrust bank account maintained by his grandmother, Margaret Irby Peade, in Colonial Heights. Peade, who did not use mobile banking, testified that she had not made the mobile banking transactions. She also testified that she had not authorized anyone to make the transactions, and she did not know who had done so. She reported the unauthorized transactions to her bank and to the police. Sergeant T.E. Johnson of the Colonial Heights Police Department investigated the thefts. He identified Brewer as a suspect, and he arranged to interview Brewer. Brewer admitted to Sergeant Johnson that he had engaged in a series of banking transactions in which he transferred at least $6,000 from Peade's SunTrust bank account to his own accounts with Capital One and Amazon. In addition, it was determined that Peade had once written Brewer a personal check, and a search warrant executed at Brewer's residence produced a voided check from Peade's account. Brewer was charged with identity theft with the intent to defraud, computer fraud, and grand larceny based on the unauthorized mobile banking transactions. Following a bench trial, the circuit court convicted Brewer of the charged offenses by final order entered on October 1, 2018.

## B. Brewer's Petition for a Writ of Actual Innocence

In his petition for a writ of actual innocence, Brewer states that his grandmother "wrote a letter and later a notarized affidavit affirming that she falsely accused me under the coercion of my uncle, [Ronald] Peade, who was recently released from prison." He maintains that this recantation evidence was discovered "[a]fter my grandmother was no longer under the intimidation of my uncle, who fled from Virginia to Florida when he got in trouble with the law again." In the signed and notarized affidavit, Peade states that Brewer was able "to receive, transfer, and withdraw money from my accounts" and that he "always had my permission to use my checking account to pay his bills or receive money, and he is additionally an authorized user on my accounts." She further states in the affidavit that she "signed the police report knowing that the allegations were entirely false" and that she "falsely testified against" Brewer at his trial. Peade makes similar averments in the self-styled "Pardon Letter."

## C. The Evidentiary Hearing Before the Circuit Court

At the recent evidentiary hearing before the circuit court, Peade testified, however, that she did not give Brewer access to her SunTrust bank account and that she "never gave him any permission" to use her bank account. When presented with the affidavit, she stated, "It's not true. I didn't give him permission." After reviewing the affidavit, she testified, "I don't remember signing nothing like that. I know I didn't give him permission. I don't remember ever seeing these." She later clarified (when looking at the affidavit that she had purportedly signed), "I've never seen it before," and she again stated that she did not recall signing the affidavit. Peade reiterated that she did not give Brewer permission to use or to transfer money from her SunTrust bank account to his Capital One bank account. In addition, she maintained that she did not have memory problems when she testified in 2018 at Brewer's trial.

Sergeant Johnson testified that he spoke to Peade multiple times during his investigation into the unauthorized transactions, and he stated that he never doubted the veracity of Peade's allegations that Brewer "had used her credit card information and obtained some credit card information to gain access to her bank accounts and purchased items." He also never doubted Peade's assertion that she had not given her grandson

-3-

permission to access her bank account because "we had obtained evidence throughout my investigation to support all of her allegations." Sergeant Johnson maintained that he did not pressure Peade to sign the police report, and he emphasized that Peade "absolutely seemed like she was rational" during their interactions over the course of the investigation.

Alfred Gray Collins, III, the Commonwealth's Attorney for the City of Colonial Heights, testified that although he was not personally involved in the prosecution of Brewer, he recalled that he had a conversation with Peade in April 2018 about the case. He did not remember the substance of that conversation, but he stated that there was nothing in the case file indicating that Peade ever sought to recant her allegations against her grandson. He emphasized that there was also nothing in the case file suggesting that the prosecution had ever offered Peade immunity for potential perjury if she had decided to recant her trial testimony against Brewer.

Janet Peade Brewer – Brewer's mother and Peade's daughter – testified that she was present at her mother's house when her mother gave her son permission to access her mother's bank accounts. She testified that she was present when her mother gave her son a credit card to use that was connected to her mother's SunTrust bank account. She further stated that her mother had even given her son a written power of attorney, and she noted that her son was one of the beneficiaries of the trust of her late father, William Peade. However, she acknowledged that the written power of attorney was not introduced at her son's trial – even though she testified that the power of attorney had been created before her son's trial – and even though she maintained that she was present during every meeting between her son and her son's defense attorney. She confirmed that her mother did not have memory problems at the time of her son's trial in 2018, but she claimed that her mother began having memory issues in early 2023.[2]

_____

[2] Dr. Mubashir Khan, M.D., a neurologist, reviewed Peade's medical records. He testified at the evidentiary hearing that Peade was evaluated in November 2022 by his former colleague, Dr. Bushra Khan, M.D., who performed a "mini mental status examination" at their office and diagnosed Peade with "mild cognitive impairment" – which typically affects short-term memory but not long-term memory. Dr. Mubashir Khan noted that Peade was later diagnosed with unspecified dementia in May 2023 by Dr. Bushra Khan following a telehealth appointment – where Peade's grandson was also present. He pointed

D. The Circuit Court's Findings of Fact

In its Certification of Findings of Fact, after observing Peade testify in the evidentiary hearing, the circuit court judge determined that Peade's "mental acuity appeared intact," that "she was certain and confident of what she knew to be true," and that she possessed "an intact memory for a person of her age." Based on Peade's "clear, unequivocal, precise, and repeated testimony," the circuit court was "convinced that her testimony was credible and accurate when she stated that she never gave Mr. Brewer permission to access her bank account and transfer money from it." The circuit court found Peade's "emphatic testimony that she had never seen the affidavit before to be credible and genuine."[3] Given that Peade's testimony at the evidentiary hearing was consistent with her testimony at Brewer's trial, the circuit court concluded that Peade's testimony "is simply not new evidence and certainly not exculpatory evidence." The circuit court further concluded that the testimony and evidence "could have been discovered or obtained prior to the conviction orders becoming final."

II. ANALYSIS

"Code §§ 19.2-327.10 and -327.11(A) confer upon this Court jurisdiction over petitions for actual innocence based on non-biological evidence." *Grimm v. Commonwealth*, 81 Va. App. 74, 94 (2024). Such cases present "one of the rare situations in which the General Assembly has charged an appellate court with engaging in factual evaluation." *Dennis v. Commonwealth*, 297 Va. 104, 127 (2019). "In proceedings under

---

out that although Dr. Bushra Khan "did not repeat the mini mental status examination" during the May 2023 telehealth appointment with Peade, Dr. Bushra Khan "based her diagnoses on the basis of the deterioration in her memory and the behavior changes" reported by Peade's family. When asked if he ever personally evaluated Peade, Dr. Mubashir Khan clarified, "I never met Mrs. Peade. I'm just standing [*sic*] from the records, the records I have."

[3] The circuit court also found the testimony of Sergeant Johnson and Commonwealth's Attorney Collins "to be credible," "unimpeached, and without motive to lie." Although the circuit court found Dr. Mubashir Khan to be "credible and sincere," the circuit court "question[ed] the reliability of the diagnosis" when Dr. Khan also noted that he had never seen Margaret Peade. On the other hand, the circuit court opined that Janet Peade Brewer "was not fully cooperative and often claimed to not remember certain details." The circuit court did "not find her to be credible" in her testimony given the court's "observations of Ms. [Janet] Brewer's demeanor, uncertainty as to any details, and her apparent interest in the outcome of her son's petition."

-5-

the statutes governing petitions for writs of actual innocence based on nonbiological evidence," this Court "has the same authority to weigh and evaluate documentary and physical evidence as a trial court would have." *Id.* (quoting *Haas v. Commonwealth*, 283 Va. 284, 292 (2012)).

To be entitled to a writ of actual innocence, "'the petitioner must present "new" evidence' of his innocence."[4] *Grimm*, 81 Va. App. at 93 (quoting *Parson v. Commonwealth*, 74 Va. App. 428, 440 (2022)). To meet this requirement, the petitioner must show *both* that the evidence "was previously unknown or unavailable to him or his trial attorney of record at the time the conviction . . . became final in the circuit court" *and* "that the previously unknown or unavailable evidence is such as could not, by the exercise of diligence, have been discovered or obtained before" his conviction became final in the circuit court. Code § 19.2-327.11(A)(iv)(a), (vi)(a). "In the context of the actual innocence statutes, we have defined diligence as a 'devoted and painstaking application to accomplish an undertaking.'" *Tyler v. Commonwealth*, 73 Va. App. 445, 464 (2021) (quoting *Madison v. Commonwealth*, 71 Va. App. 678, 702 n.14 (2020)).

In addition, the petitioner must prove "that the previously unknown, unavailable, or untested evidence is material and, when considered with all of the other evidence in the current record, will prove that no rational trier of fact would have found proof of guilt . . . beyond a reasonable doubt." *Id.* at 462 (alteration in original) (quoting Code § 19.2-327.11(A)(vii)). Furthermore, the petitioner must establish "that the previously unknown, unavailable, or untested evidence is not merely cumulative, corroborative, or collateral." Code § 19.2-327.11(A)(viii). "The petitioner must prove all these elements by a preponderance of the evidence." *Grimm*, 81 Va. App. at 93 (quoting *Parson*, 74 Va. App. at 441). However, the petitioner's failure to establish any one of the necessary elements "requires us to dismiss his petition." *Tyler*, 73 Va. App. at 463.

---

[4] "Evidence is 'something (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact.'" *Knight v. Commonwealth*, 71 Va. App. 492, 518 (2020) (alteration omitted) (quoting *In re Pierce*, 44 Va. App. 611, 612 (2004)). "A fact is 'an actual or alleged event or circumstance, as distinguished from its legal effect, or interpretation.'" *In re Neal*, 44 Va. App. 89, 90 (2004) (emphasis omitted) (quoting *Black's Law Dictionary* 628 (8th ed. 2004)). In contrast, "legal arguments," including those "capable of being raised on direct appeal," are "not 'evidence.'" *Id.*

The Supreme Court has observed that "recantation evidence is generally questionable in character and is widely viewed by courts with suspicion because of the obvious opportunities and temptations for fraud." *Carpitcher v. Commonwealth*, 273 Va. 335, 346 (2007) (collecting cases), *quoted with approval in Haas*, 283 Va. at 292. As the Supreme Court has further observed:

> Such skepticism increases with the passage of time. Recantation evidence appearing long after the trial has ended places the opposing party at a disadvantage similar to that which justifies statutes of limitations. Memories may have faded, witnesses may have disappeared or become incapable of testifying, physical evidence may be unrecoverable and the recanting witness may have had ample time to acquire an extraneous motive to falsify his original testimony.

*Haas*, 283 Va. at 292. "Because victims' recantations are often unreliable, it is rare that a petitioner can offer clear and convincing evidence that the recantation is true and it is the trial testimony that is false." *Madison*, 71 Va. App. at 696 (quoting *Montgomery v. Commonwealth*, 62 Va. App. 656, 675 (2013)). "The materiality inquiry is particularly important when a petition for a writ of actual innocence is based largely on a recantation because, '[u]nless proven true, recantation evidence merely amounts to an attack on a witness' credibility by the witness herself.'" *Dennis*, 297 Va. at 128 (alteration in original) (quoting *Carpitcher*, 273 Va. at 346). As this Court has recognized, "'[d]etermining whether evidence is true requires factual findings,' an endeavor that lies within the expertise of the trial courts, not the appellate courts." *Knight v. Commonwealth*, 71 Va. App. 492, 507 (2020) (alteration in original) (quoting *Dennis*, 297 Va. at 124).

Upon review of the entire record before this Court, we conclude that Brewer's claim fails to establish all the necessary elements for a writ of actual innocence. Brewer has not established that his grandmother's purported recantation of her trial testimony in the affidavit and in the letter is material within the meaning of Code § 19.2-327.11(A)(vii) because he did not prove that his grandmother's recantation was true. The circuit court expressly found in its certified findings of fact that, "based on her clear, unequivocal, precise, and repeated testimony" at the evidentiary hearing, Margaret Peade's "testimony was credible and accurate when she stated that she never gave Mr. Brewer permission to access her bank account and transfer money from it."

The circuit court further found Peade's "emphatic testimony that she had never seen the affidavit before to be credible and genuine."

In addition, although Brewer sought to elicit testimony at the evidentiary hearing that called into question the soundness of his grandmother's memory, the circuit court specifically found that Peade possessed "an intact memory for a person of her age." The circuit court further found that, at the evidentiary hearing, Peade's "mental acuity appeared intact, and she was certain and confident of what she knew to be true." The testimony of Cody Brewer's own mother, Janet Peade Brewer, even confirmed that her mother, Margaret Peade, did not have memory problems at the time of Brewer's trial in 2018. Likewise, the investigating officer, Sergeant Johnson, testified that Peade "absolutely seemed like she was rational" during his interactions with her. The circuit court found Sergeant Johnson's testimony "to be credible" and "decisive, composed, unimpeached, and without motive to lie," and it found the testimony of Brewer's mother to be not credible, given the court's "observations of Ms. Brewer's demeanor, uncertainty as to any details, and her apparent interest in the outcome of her son's petition." Furthermore, despite Dr. Mubashir Khan's testimony that his former colleague diagnosed Peade with "mild cognitive impairment" in November 2022, and later diagnosed her with unspecified dementia in May 2023, Dr. Khan acknowledged that he never personally evaluated or diagnosed Peade. In addition, the circuit court questioned "the reliability of the diagnosis" given "the basis of information reported at the May 2023 encounter" and the court's own "observations of Ms. Peade" at the evidentiary hearing.

In short, the evidence in the record before this Court supports a finding that Peade's testimony, both at Brewer's trial in 2018 and at the recent evidentiary hearing in the circuit court, was true – as opposed to her purported recantation contained in the affidavit that Peade emphatically testified she had never seen before. Considering the entire record, we certainly cannot say that no rational trier of fact would have found proof of guilt beyond a reasonable doubt. Therefore, because Brewer failed to meet his burden of establishing materiality in the purported recantation by Peade, we find that he has failed to satisfy his burden of proof under the actual innocence statute.

### III.  CONCLUSION

"Chapter 19.3 of Title 19.2 of the Code of Virginia provides both the authority and the statutory boundaries given by the General Assembly for granting a writ of actual innocence." *Waller v. Commonwealth*, 70 Va. App. 772, 775 (2019).  Because Brewer's petition for a writ of actual innocence does not satisfy the statutory requirements, this Court cannot grant him the relief he has requested.  Consequently, we hold that Brewer is not entitled to the writ, and we dismiss his petition.

This order shall be published.

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

-9-